IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>PETER MICHAEL BURNO,<br><br>        Defendant. | Case No. 3:19-cr-00128-01-RRB<br><br>**ORDER REGARDING<br>MOTION TO SUPPRESS**<br>**(Docket 137)** |

Before the Court is Defendant, Peter Michael Burno, with a Motion to Suppress the November 1, 2019, search and seizure of a parcel by U.S. Postal Inspectors.[1] Defendant alleges that the search and seizure of the parcel was a violation of his Fourth Amendment rights.[2] The United States has opposed the motion,[3] and the Magistrate Judge filed a Report and Recommendation recommending that the Motion to Suppress be denied for lack of standing.[4] Defendant has objected to the Report and Recommendation,[5] to which the United

---

[1] Docket 137.
[2] Docket 138.
[3] Docket 139.
[4] Docket 147.
[5] Docket 150.

States has responded.⁶ This Court reviewed the matter and requested further briefing, which has been filed by both parties.⁷

## I. FACTS

On Friday, November 1, 2019, a U.S. Postal Inspector in Anchorage, Alaska, intercepted a package after determining that it had suspicious characteristics he deemed consistent with drug trafficking. The package was mailed from Hawthorne, CA, with a return address for "D. Rheinschild," and was addressed to "Todd Brown" in Anchorage, AK. The postal inspector determined that "D. Rheinschild" was associated with the return address in 2018, but that there were "more recent records with different names associated with that address."⁸ The postal inspector also determined that "Todd Brown" was not associated with the recipient address.

A canine examination of the package was conducted on Monday, November 4, 2019, in Anchorage. The dog alerted, indicating the presence of a controlled substance. A search warrant for the package was obtained, revealing 3,816.62 gross grams of methamphetamine.⁹

In a controlled delivery on November 5, 2019, co-defendant Bell took delivery of the package and moved it to another location. According to the affidavit

---

⁶ Docket 151.
⁷ Dockets 153, 154, 156.
⁸ Docket 139 at 3.
⁹ Docket 1-1 at 3.

*United States v. Burno*  Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137)  Page 2
Case 3:19-cr-00128-RRB-MMS   Document 157   Filed 01/13/21   Page 2 of 10

of the postal inspector, a (post-arrest) review of text messages between Defendant Burno and others suggested that the parcel was retrieved from its destination on behalf of Burno.[10] During a post-arrest interview on November 6, 2019, Burno indicated that the address on the parcel was his address. He had a key to the front door to the residence.[11]

The parties agree that the physical address to which the package was addressed later was confirmed to be Defendant's address, and that the investigators spoke with co-defendant Bell after delivery of the package, and Bell told the officers the package had been mailed by Defendant Burno.[12]

## II. DISCUSSION

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."[13] "[T]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."[14]

---

[10] Docket 1-1 at 5.
[11] Id.
[12] Docket 150 at 2.
[13] United States v. Padilla, 508 U.S. 77, 81–82 (1993) (citation omitted).
[14] United States v. Caymen, 404 F.3d 1196, 1199 (9th Cir. 2005).

United States v. Burno  Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137)  Page 3
Case 3:19-cr-00128-RRB-MMS   Document 157   Filed 01/13/21   Page 3 of 10

## A. Fourth Amendment Standing to Object to Search is Not Jurisdictional

The Magistrate concluded that because Defendant was neither the purported sender nor the addressee of the package, Defendant reasonably appeared to be a third party to the package, and third parties typically do not have privacy interests in packages.[15] The Magistrate also noted that Defendant did not address standing in his underlying motion.[16] He therefore determined that Defendant lacked standing to challenge the search and seizure of the parcel, because he did not fulfill his "burden to establish that his legitimate expectation of privacy in [the package] was violated under the totality of the circumstances."[17] Accordingly, the Magistrate did not reach the merits of Defendant's underlying motion, and concluded only that Defendant lacked standing to object to the search.

Article III standing "is jurisdictional and must be assessed before reaching the merits."[18] In contrast, "Fourth Amendment standing is subsumed under

---

[15] Docket 147 at 4.
[16] *Id.* But this Court notes that the issue of standing was not raised until the government filed its Opposition to the Motion to Suppress, and Defendant was not entitled to automatically file a Reply. No Reply was requested prior to the issuance of the report and recommendation. Moreover, no evidentiary hearing was held. Defendant never was given the opportunity to address standing until he filed objections to the report and recommendation.
[17] *Id.* at 3, citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).
[18] *Byrd v. United States*, ___ U.S. ___, 138 S. Ct. 1518, 1530 (2018) ("The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits."); *see also United States v. Taketa,* 923 F.2d 665, 669 (9th Cir. 1991) (holding that Fourth Amendment standing, unlike Article III standing, is a matter of substantive Fourth Amendment law. "[T]o say that a party lacks Fourth Amendment standing is to say that his reasonable expectation of privacy has not been infringed.")

*United States v. Burno* Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137) Page 4
Case 3:19-cr-00128-RRB-MMS   Document 157   Filed 01/13/21   Page 4 of 10

substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim."[19]

Here, the Court concludes that the most prudent way to proceed is to address the merits of Defendant's Motion to Suppress while assuming, but not concluding, that Defendant has Fourth Amendment standing to proceed with the instant motion. Inasmuch as the matter has been fully briefed, and in order to expedite final resolution of the matter, this Court will address and resolve the pending motion. Assuming that Defendant had a privacy interest in the package, he still must establish a Fourth Amendment violation in order to prevail on his Motion to Suppress.

## 2. Government's Initial Interference with Package was Reasonable

To determine whether the Government's interference with the timely delivery of the express mail package is reasonable within the meaning of the Fourth Amendment, the Court first must decide whether the postal inspector had "a reasonable and articulable suspicion" that the package contained contraband or evidence of illegal activity.[20] To determine whether reasonable suspicion exists, a court "must look at the 'totality of the circumstances' of each case to see whether

---

[19] *Byrd*, 138 S. Ct. at 1530.
[20] *United States v. Hernandez,* 313 F.3d 1206, 1210 (9th Cir. 2002) (internal citation omitted).

*United States v. Burno* Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137) Page 5
Case 3:19-cr-00128-RRB-MMS   Document 157   Filed 01/13/21   Page 5 of 10

the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."[21]

Defendant argues that reasonable suspicion did not exist to justify seizure of the package. Highlighting the "Drug Package Profile" used by the U.S. Postal service, the factors considered include: (1) size and shape of the mailing; (2) package heavily taped and attempts to close or seal all openings; (3) hand printed or written labels; (4) unusual return name and addresses; (5) unusual odors; (6) fictitious return addressee; and (7) destination of parcel.[22] Defendant argues that "less than half" of these factors were present.[23]

The Government's Opposition to the Motion to Suppress suggests that there are additional factors that can support a reasonable and articulable suspicion of criminal activity in the Ninth Circuit, including the use of Priority Express Mail, shipping from a known source state; paying for postage in cash; and incorrect/incomplete information on mailing label.[24] The government argues that there were adequate factors to warrant temporary seizure of this package, including that Los Angeles is a known source area for narcotics to be shipped to Alaska; postage of $106.55 was paid in cash; the package was shipped Priority Mail Express; the mailing label was handwritten; "D. Rheinschild" no longer appeared to live at

---

[21] *Id.*, citing *United States v. Arvizu,* 534 U.S. 266, 273 (2002).
[22] Docket 138 at 4–5.
[23] *Id.* at 5.
[24] Docket 139 at 7.

*United States v. Burno*　　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137)　　　　　　　　　　　　　　　　　　Page 6
Case 3:19-cr-00128-RRB-MMS　　Document 157　　Filed 01/13/21　　Page 6 of 10

the return address; "Todd Brown" did not exist at the recipient address; the mailing post office was located over 7 miles from the return address, despite the location of several other post offices closer to that address; and the weight of the parcel (just over 11 pounds) did not reconcile with the outer packaging, which suggested contents which should have weighed over 20 pounds.[25]

      The Court may not consider each factor in isolation. Reasonable suspicion may exist even if each factor, standing alone, is susceptible to an innocent explanation.[26] Furthermore, while the determination of reasonable suspicion is fact-specific, the circumstances taken together must be evaluated as they would be "understood by those versed in the field of law enforcement."[27] The Court finds it particularly persuasive that postage over $100 was paid for in cash, and that neither the name of the sender nor the name of the recipient currently was associated with the corresponding address. The Court concludes that the Government has established that sufficient reasonable suspicion existed in the minds of the U.S. Postal Inspectors to justify seizing the package and subjecting it to a canine search.

### 3. Length of Delay was Reasonable

      Prolonged detention of a package that initially is seized based on reasonable suspicion is unreasonable under the Fourth Amendment,[28] but the length

---

[25] *Id.* at 8.
[26] *Arvizu*, 534 U.S. at 277–78.
[27] *Hernandez*, 313 F.3d at 1210.
[28] *United States v. Aldaz*, 921 F.2d 227, 230 (9th Cir. 1990).

*United States v. Burno*                                                                                              Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137)                                  Page 7
Case 3:19-cr-00128-RRB-MMS   Document 157   Filed 01/13/21   Page 7 of 10

of time that courts have deemed "reasonable" varies. The Ninth Circuit has found delays ranging from seven to thirteen days to be unreasonable based on the circumstances of that case.[29] The Government suggests that this case is akin to *United States v. Gill*, where a six-day delay was reasonable, because the investigation was not conducted at a "leisurely pace."[30]

This case involved a three-day delay, from Friday until Monday.[31] According to the Postal Inspector's affidavit, the press of business prevented him from reviewing the package for several hours, and he did not review the package until almost 4 p.m. on Friday.[32] He contacted two canine officers, and determined that a canine was not available on Friday afternoon, nor was one available over the weekend. A canine was arranged for Monday.[33]

Defendant argues that even if reasonable suspicion existed, the detention of the package for three days was unreasonable under the Fourth Amendment.[34] Although Defendant acknowledges that the Ninth Circuit has upheld as reasonable a five-delay delay arising because it involved transporting a canine to inspect a package located in a remote Alaskan village, he notes that the parcel in this

---

[29] *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988).
[30] 280 F.3d 923, 929 (9th Cir. 2002).
[31] The Court notes that arguably the package was delayed for only two days, because although it was seized for further examination on Friday, the scheduled delivery date was not until Saturday.
[32] Docket 154.
[33] Docket 139 at 3–4; Docket 154.
[34] Docket 138 at 5–8.

*United States v. Burno* Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137) Page 8
Case 3:19-cr-00128-RRB-MMS Document 157 Filed 01/13/21 Page 8 of 10

case was located in Anchorage, where a canine readily should be available.[35] He further argues, without citation, that contacting two canine officers was insufficient effort on the part of the Postal Inspector to execute the search in a reasonable timeframe.[36]

Regardless of the time of day the package was reviewed by the assigned Postal Inspector on Friday, the Court cannot conclude, given the intervening weekend, the general press of postal business, and the immediate unavailability of a canine, that it was patently unreasonable to wait until Monday to conduct the canine search.

## III. CONCLUSION

For the reasons set forth above, and affording Defendant the benefit of the doubt with regard to standing, the Court concludes that reasonable suspicion existed on November 1, 2019, for the Postal Inspector to seize the package in question and submit it to a canine search. Moreover, given the press of business and the intervening weekend, as well as the lack of immediate access to a canine, the three days between seizure and search was not unreasonable under the Fourth Amendment.

Therefore, the Motion to Suppress at Docket 137 is hereby DENIED.

---

[35] *Id.* at 6, citing *Aldaz*, 921 F.2d at 231.
[36] Docket 156 at 4.

*United States v. Burno*     Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137)     Page 9
Case 3:19-cr-00128-RRB-MMS    Document 157    Filed 01/13/21    Page 9 of 10

IT IS SO ORDERED this 13th day of January, 2021, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*United States v. Burno* Case No. 3:19-cr-00128-RRB
Order Regarding Motion to Suppress (Docket 137) Page 10
Case 3:19-cr-00128-RRB-MMS   Document 157   Filed 01/13/21   Page 10 of 10